## TERRITORY *v.* CAMELIO ANDUHA.

### No. 1905.

ARGUED MAY 9, 1930.                    DECIDED MAY 19, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.
(Perry, C. J., dissenting.)

This case involves the constitutionality of Act 256, L. 1929. The Act is as follows: "Any person who shall habitually loaf, loiter and/or idle upon any public street or highway or in any public place, shall be guilty of a misdemeanor, and upon conviction thereof be punished by a fine of not more than one hundred dollars, or by imprisonment for not more than one year, or by both such fine and imprisonment."

On the 10th day of August, 1929, Camelio Anduha was charged in the district court of Honolulu with a violation of this statute in manner and form as follows: "William Clark, first being duly sworn says: That Carmela Anduha

did at Honolulu, City and County of Honolulu, Territory of Hawaii, for 14 days last past prior to and including the 8th day of August, A. D. 1929, did habitually loaf, idle and/or loaf upon a certain public street, to-wit, Liliha street, situated in Honolulu aforesaid, and did then and there and thereby violate the provisions of section 1 of Act 256 of the Session Laws of 1929." The defendant demanded a jury trial and was duly committed to the circuit court where he interposed a demurrer to the complaint on the ground that the statute in question was an unauthorized exercise by the legislature of the police power of the Territory and therefore unconstitutional. The demurrer was sustained and the Territory has brought the case here on writ of error.

It cannot be denied, of course, that the Territory, acting through its law-making body, may in the exercise of its police power impose restrictions upon the right to use public streets and highways. This power, which is very comprehensive, has too frequently been upheld to be now questioned. It must also be conceded, however, that, broad as it is, the power is not plenary and that one of its limitations is that the regulations and inhibitions imposed must be reasonably necessary to the public welfare and not inconsistent with fundamental rights that are common to all. Streets and highways are intended to facilitate travel from one locality to another and to promote the comfort and convenience of those who use them. Whatever, therefore, reasonably tends to impede or endanger their use may be regulated or even prohibited. For instance, loitering, loafing or idling on them, whether it be occasional or habitual, in such a manner and at such times and places and under such circumstances that their free and convenient use by others is impeded or rendered dangerous or uncomfortable or that the public welfare is imperiled may be prohibited by legislative enactment. If

this had been the kind of loitering, idling or loafing forbidden by the statute we would have a different question. The statute before us is much more sweeping than this. It makes it a misdemeanor to habitually loiter, loaf or idle, under any circumstances, in any of the places mentioned, whether such conduct interferes with the rights of others or imperils the public welfare. All loitering, loafing or idling on the streets and highways of a city, even though habitual, is not necessarily detrimental to the public welfare nor is it under all circumstances an interference with travel upon them. It may be and often is entirely innocuous. The statute draws no distinction between conduct that is calculated to harm and that which is essentially innocent.

Visitors, lured by the fame of our climate and of our natural scenery and the hospitality of our people, come here for recreation and pleasure. Many of them, having no other occupation, habitually but harmlessly idle or loiter upon our streets and highways. In their pursuit of happiness, which is a guaranteed right, they loiter before shop windows, pause to enjoy the changing colors of the ocean and to talk with friends. It would be shocking to say that so long as they are innocent of any wrong and conduct themselves with due regard to the rights of others and the good order of the community the legislature has the constitutional authority to declare them misdemeanants and subject them to arrest and imprisonment. Also, there are persons who, taking advantage of the leisure they have on the Sabbath, habitually go for long hikes along the public highways. When weariness overtakes them they stop for rest. Attracted by the beauties of the landscape they loiter and idle for as long as they choose. The free use of the highway by others is not impeded and the public peace is not disturbed. Is the legislature empowered to declare them lawbreakers? Children, who

have reached the age of legal responsibility, on their way to and from school habitually loiter along the sidewalks. If the statute is constitutional they are in danger of imprisonment even though their manner of using the sidewalks is without probable injury or inconvenience to any one.

A criminal statute that is so broad in its prohibitive terms as to include acts that are inherently harmless as well as acts that are potentially dangerous cannot, for constitutional reasons, be upheld. The case that is most nearly like the one before us is *City of St. Louis* v. *Gloner*, 210 Mo. 502. The City of St. Louis, which was given statutory authority to regulate the use of its streets, passed an ordinance providing that "any person or persons who shall lounge, stand or loaf around or about or at street corners or other public places, in the day or night time, * * * shall be deemed guilty of a misdemeanor and, upon conviction thereof, before either of the police justices, shall be fined in the sum of not less than five or more than fifty dollars." The defendant was charged with a violation of these provisions of the ordinance. At the conclusion of the trial he was discharged and the City of St. Louis took the case to the supreme court. The court in affirming the judgment of the lower court said (pp. 509, 510) : "While the city has the undoubted right, under its charter, to regulate the use of its streets, it has no right to do so in a way that interferes with the personal liberty of the citizen as guaranteed to him by our constitution and laws. Under this ordinance it is just as much an offense to stand or loaf around upon the corner of one of the streets in the city for five minutes as for two hours or more, time not being an ingredient of the offense, and this, too, regardless of the fact that the offender may not during that time impede the passage of other pedestrians or otherwise interfere with the rights of others. The defend-

ant had the unquestioned right to go where he pleased and to stop and remain upon the corner of any street that he might desire, so long as he conducted himself in a decent and orderly manner, disturbing no one, nor interfering with any one's right to the use of the street. * * * It is, however, said for the city that 'John Smith, a member of the public, has no right for his own private purposes, whatever they may be, to take his stand for a period of two hours every day upon a particular portion of the public street in a great and populous city.' That he has such right there can, in our opinion, be no question, providing he conducts himself in a peaceful, orderly manner, disturbs no one, and commits no overt act." In the case of *Pinkerton* v. *Verberg,* 78 Mich. 573, the court said (p. 584) : "Personal liberty, which is guaranteed to every citizen under our constitution and laws, consists of the right of locomotion,—to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. One may travel along the public highways or in public places; and while conducting themselves in a decent and orderly manner, disturbing no other, and interfering with the rights of no other citizens, there, they will be protected under the law, not only in their persons, but in their safe conduct. The constitution and the laws are framed for the public good, and the protection of all citizens, from the highest to the lowest; and no one may be restrained of his liberty, unless he has transgressed some law." The principles announced in these cases are entirely applicable to the instant case though there is a difference in the facts.

The decision of the circuit court is affirmed.

*E. R. McGhee,* Deputy Attorney General (*H. R. Hewitt,* Attorney General, with him on the briefs), for the Territory.

*H. E. Stafford* (also on the brief) for defendant in error.

DISSENTING OPINION OF PERRY, C. J.

The provision of the statute under consideration is that "any person who shall habitually loaf, loiter and/or idle upon any public street or highway or in any public place, shall be guilty of a misdemeanor." It may be assumed for the purposes of this case that in so far as the statute seeks to prohibit loitering "in any public place" other than a public street or highway, it is unconstitutional, for the provision in that respect is severable from the remainder. "It is elementary that the same statute may be in part constitutional and in part unconstitutional, and if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected." 36 Cyc. 976. "The invalidity of a portion of a statute will not defeat the whole act if the unobjectionable part is separable, complete and capable of enforcement." *Territory* v. *Hoy Chong,* 21 Haw. 39. It is not necessary to the application of this rule that the legislature should have expressly declared in the statute that if any part is found to be unconstitutional it wishes the remainder to be regarded as constitutional.

Moreover, the defendant in the case at bar is not affected by any supposed unconstitutionality of the prohibition against loitering in public places other than streets. The sole charge against him is that he loitered in a street. A contention that the statute is unconstitutional will not be listened to by courts when it is presented by one whose interests are not affected by the alleged unconstitutional provision. *Territory* v. *Miguel,* 18 Haw. 402; *In re Craig,* 20 Haw. 483; *Wilder* v. *Colburn,* 21 Haw. 701. The question then is narrowed to the inquiry whether a

statute passed by the legislature declaring it to be a misdemeanor for any person to "habitually loaf, loiter and/or idle upon any public street or highway" is unconstitutional.

All laws passed by the legislature are presumed to be constitutional. Any doubts should be resolved in favor of their constitutionality.

Streets are primarily intended for purposes of travel, for moving traffic, with only such reasonable interruptions as are required for purposes of business or of pleasure. Other places are provided, out of the public treasury as well as by private enterprise, for habitual and long-continued pursuit of idleness, recreation and rest. There can be no doubt that in the exercise of the police power the legislature may regulate and restrict traffic on streets, by pedestrians as well as by vehicles, so as to ensure the use of streets for those purposes only for which they were acquired and constructed at the public expense. It is conceivable to me that the enactment of this statute was due to the belief on the part of the legislature that thereby the public safety, tranquillity and happiness would be aided and fostered; that thereby evil-disposed persons intending to commit offenses such as picking pockets, procuring and larceny would be hampered in their nefarious designs; that vagrants would be thereby encouraged to seek lawful occupations; that in times of strikes not only would the strikers be thereby encouraged to seek other work, but that the possibility of rioting and other disorders would be thereby lessened; that all loitering, even in its incipiency as to numbers, tends towards obstruction of lawful traffic, pedestrian and other; and that at times it becomes offensive and a nuisance to law-abiding persons seeking the ordinary use of highways to encounter habitual loafers, whether singly or in groups, on the sidewalks or in the main part of the street. Such considerations as these, it

seems to me, bear some reasonable relation to the remedy created by the statute. They constitute reasonable cause for its enactment. It is for the legislature alone to determine whether the conditions exist to meet which the restrictions of the statute are imposed.

Nor can law-abiding citizens, as it seems to me, complain that this is an unreasonable restriction of their liberty,—their liberty, it must be under the contention of the defendant, to loiter, to idle and to loaf habitually on our streets and on our sidewalks. Laws are often passed, equally binding upon the good as well as upon the bad, which constitute some restriction upon what otherwise would be the rights of those whose intentions are all good and non-criminal. A familiar example is to be found in the requirements of statutes or ordinances relating to vehicular traffic. Boulevard stops must be made, irrespective of whether the streets are wholly free from other traffic for two blocks in every direction. They must be made irrespective of whether the particular motorist is consistently careful and watchful at street corners as well as elsewhere. It is deemed safest and best for all concerned to require such stops at all times and under all circumstances. Similarly it may be deemed safest and best for the legislature to prohibit all habitual loitering and loafing on the streets, even though some of it may be innocent and harmless. I am unable to regard the legislative act as being so devoid of reasons to support it as to constitute an unreasonable restriction of the liberty of good citizens.

Authorities on the subject are very rare. *Pinkerton* v. *Verberg,* 78 Mich. 573, cited by the majority, was an action for damages for assault and illegal arrest. The defendant, a policeman, had arrested the plaintiff upon the suspicion that she was a street walker. There was no statute on loitering. The only statute given consideration by the

court was one specifying the circumstances under which an arrest could be made without warrant. The case was regarded by the court as a glaring one of an officer making an arrest for the sole reason that the plaintiff had given him "some sauce." The decision of the court simply was that there was no reasonable cause for the arrest.

In *St. Louis* v. *Gloner*, 210 Mo. 502, the only other case cited by the majority, there was an ordinance on loitering, but it was not required thereby that the prohibited loitering should be habitual. As testified by the officer making the arrest, the defendant was in reality arrested because he was "picketing," that is, "standing around corners and requesting men not to take strikers' places." An important consideration, evidently, in the minds of the court was that picketing was not unlawful and several cases were referred to in the opinion in support of that view. The case is to a certain extent an authority in favor of the defendant in the case at bar, but its reasoning to me is not persuasive. The court remarked that under the ordinance then under consideration it was "as much an offense to stand or loaf around upon the corner of one of the streets in the city for five minutes as for two hours or more, time not being an ingredient of the offense." In the case of our statute an occasional loafing or loitering is not prohibited. It is only when those acts are committed habitually that they come in conflict with the law. The writer of the note to the *Gloner* case, reported also in 15 L. R. A., N. S., 973, makes this comment: "A search has disclosed little authority upon this question, and no other case has been found where it was contended that such an ordinance was unconstitutional as an invasion of personal liberty."

In *Commonwealth* v. *Challis*, 8 Pa. Super. Ct., 130, 132, 133 (1898, by a court composed of eight judges), the ordinance prohibited the obstruction of streets and side-

walks by persons "idly standing, loafing or congregating thereupon" and therefore differed from our statute in the requirement that the loafing should be such as to obstruct the streets. In spite of this difference, however, the opinion rendered is enlightening in suggesting some of the reasons that may have moved the legislature in the enactment of our statute. The court said: "The evil aimed at by the ordinance in this case is a common nuisance to the citizens who are obliged to pass and repass where idlers and loungers congregate and obstruct the public sidewalks. The right of the public on the highways is limited to the right of passage with such stoppage as business or necessity may require. All lounging or other obstructions thereof may be abated and the offenders in this respect punished summarily for their contumacy. 'The public possess in a public highway the right of transit and of transit only. The use by every citizen of public ways must be a use appropriate to the purposes for which they are intended; that is, of transit; with such stoppages as business necessity, accident or the exigencies of travel, either in vehicles or on foot, may require. * * * It is upon this general principle that the infamous habit of corner lounging, when not prohibited by special local legislation, is illegal. The loungers who occupy the public highway are, while lounging, not using it for the purposes of passage, and are therefore obstructions of the public right of way—that is, nuisances.' *Norristown* v. *Moyer*, 67 Pa. 355. * * * The sidewalks and the carriageways are under municipal control and in the use of them the authorities may determine what is best calculated to promote the security, the comfort and the convenience of the inhabitants."

In my opinion the statute is constitutional and the demurrer should be overruled.