Kathleen HURLEY, William Pastereich, Alfred L. Grace, Eurdeane Lynch, Lee Staples, Marguerite Gomes, Ruth Banner, Ruth L. Boston, Mary R. Miranda, Patricia Rose, and Judy S. Benttinen, Plaintiffs,

v.

Albert HINCKLEY, Chief of Police of the Town of Barnstable; Robert H. Quinn, Attorney General of the Commonwealth of Massachusetts; Mrs. Ruth Rusher, Director of the Welfare Office in the Town of Barnstable; and Robert F. Ott, Commissioner of Welfare for the Commonwealth of Massachusetts; individually and in their official capacities; Defendants.

Carol DOYLE, individually and on behalf of the National Welfare Rights Organization, the Massachusetts Welfare Rights Organization, and the Somerville Welfare Rights Organization, and of other persons similarly situated, Plaintiff,

v.

Thomas J. O'BRIEN, Chief of Police of the City of Somerville; Robert H. Quinn, Attorney General of the Commonwealth of Massachusetts; James F. Brennan, Mayor of the City of Somerville; William B. Casey, Director of the Welfare Office in the City of Somerville; and Robert F. Ott, Commissioner of Welfare for the Commonwealth of Massachusetts; individually and in their official capacities, Defendants.

Civ. A. Nos. 69–88, 69–100.

United States District Court
D. Massachusetts.

June 20, 1969.
Judgment Affirmed Jan. 12, 1970.
See 90 S.Ct. 603.

Frank J. Richards, Orleans, Mass., H. Noyes Macomber, Hyannis, Mass., Michael Feldman, Lawrence Kotin, Massachusetts Law Reform Institute, Boston, Mass., for plaintiffs Hurley and others.

Michael Feldman, Lawrence Kotin, Boston, Mass., A. Van C. Lanckton, Paul Newman, Community Legal Assistance Project, Cambridge, Mass., for plaintiffs Doyle and others.

Willie J. Davis, Asst. Atty. Gen. Commonwealth of Mass. Boston, Mass., for defendants.

Before McENTEE, Circuit Judge, and CAFFREY and MURRAY, District Judges.

## OPINION OF THE COURT

FRANK J. MURRAY, District Judge.

These are two actions, each brought under Title 42 U.S.C. § 1983, seeking injunctive relief under Title 28 U.S.C. §§ 2281, 2284 and 1343(3), and declaratory relief pursuant to Title 28 U.S.C. § 2201, against certain Massachusetts State and Town officers and employees. In Civil Action No. 69–88–M ("Barnstable case") plaintiffs seek to restrain the defendants from prosecuting, and from threatening further prosecution of them in the Massachusetts courts for vio-

lations of Massachusetts General Laws, chapter 266, section 120 (trespass statute), which in pertinent part provides:

Whoever, without right, enters or remains in or upon the dwelling house, buildings, boats or improved or enclosed land, wharf or pier of another, after having been forbidden so to do by the person who has the lawful control of said premises, either directly or by notice posted thereon, shall be punished by a fine of not more than twenty dollars.

Civil Action No. 69–100–M ("Somerville case") was brought by plaintiff Doyle as a class action, Fed.R.Civ.P. 23, for an injunction against defendants to restrain them from threatening prosecution of plaintiff and others of the described class under the trespass statute, and for declaratory relief.

Plaintiff in the Somerville case is a recipient of aid to dependent children and a member of certain welfare rights organizations—voluntary associations whose members are primarily women receiving aid for dependent children and whose objectives are to obtain full and equitable aid for each child and to call attention to inequities and indignities in the administration of the welfare law. In the Barnstable case there were included among the plaintiffs certain recipients of aid to dependent children, who are also members of welfare rights organizations, and certain male organizers and advocates of welfare rights organizations.

In the Somerville case it is agreed that plaintiff was distributing leaflets relating to "welfare rights" in the waiting room of Somerville's welfare office. She refused to cease distributing the leaflets or to leave the office when, after about four hours, requested so to do by the welfare director and the police. She requested to see her caseworker and was permitted to do so. Later she was asked to carry on her activity of distributing leaflets in the corridor of the City Hall outside the waiting room. She offered no protest and complied with the request. After being in the area outside the waiting room for a short period of time, she was told by police officers to leave or she would be arrested for trespass. Thereupon she left. Plaintiff's actions did not disrupt the normal activities of the Somerville welfare office. She was the only one engaged in handing out the leaflets, and she was accompanied by no other person. No other member of her "class" was present during the time she was engaged in distributing the leaflets. She made no threats, no loud vocal demands, and no solicitations of visitors to the welfare office in an aggressive or overbearing manner. No property was damaged, removed or disarranged.

In the Barnstable case there was a limited stipulation as to certain facts, and the court heard evidence. From the evidence offered the court finds the following facts. Plaintiffs were among a group of twenty to thirty persons who were permitted by a Barnstable police officer to enter the walfare office in the Barnstable Town Hall. No objection was offered to their presence in the waiting-room area. Within a brief period of time several of the group, at least twenty—some of them carrying in their hands "petitions", so called, setting forth welfare demands—moved into the office space where the clerical and secretarial employees were carrying on the duties of their employment. The presence of the group, including plaintiffs, in the relatively confined area of the small office space made it impossible for the employees to carry on normally their duties. After a short period of time during which disruption of the office functions continued, the welfare director instructed the employees subject to her supervision to leave the office. About this time plaintiff Rose, who appeared to be the leader of the group, demanded that the welfare director meet with her and a committee. At no time was there any identification of the members of the committee or specification of its number. The welfare director refused the demand, but offered to meet with plaintiff Rose and talk with her about "any grievance" she might have. Plaintiff Rose declined the offer. None of the other plaintiffs accepted the

offer. After the members of the group, including plaintiffs, were present in the office space for more than an hour, they were asked by the welfare director to leave the premises. During their presence in the office, there were loud voices and at times profane, obscene and abusive language emanating from the group. The normal functions of the office had suspended and, due to the disruptive actions of members of the group, could not have been carried on by the employees if they had remained and sought to do so. When members of the group, including plaintiffs, refused to leave after being requested to do so by the welfare director they were told they would be arrested if they stayed. Some left at this point and others, including plaintiffs, were arrested. Not all who remained were arrested. Those who were arrested were charged with trespass under the trespass statute.

In both cases plaintiffs seek to restrain the defendants therein from the enforcement and execution of the trespass statute on the ground of its unconstitutionality under the First and Fourteenth Amendments of the Constitution of the United States, and seek a declaratory judgment that the trespass statute contravenes these Amendments. Plaintiffs' contentions are that the trespass statute is unconstitutionally vague because clauses such as "without right" and "of another" do not give them sufficient notice of the scope or limits of the statute in relation to the First Amendment and "make it unclear whether the statute applies to persons petitioning and expressing themselves on public property". They assert that no Massachusetts court has construed the statute, and claim that there is no apparent construction which would clarify the statute's vague language. They further contend that the statute is overbroad because it reaches and prohibits activities protected by the First Amendment, that is, "the right to petition and to express grievances to public officials on public property".

We begin with the observation that the trespass statute is not aimed at regulating speech or communication in any form, and with the further observation that what was involved in both Barnstable and Somerville cases was other than "pure speech". Physical presence in a public building dedicated to specific public uses other than that of a public thoroughfare, even presence for the purpose of communicating ideas, is not "pure speech". Since elements of plaintiffs' conduct as well as speech are involved here, plaintiffs' activity was subject to reasonable regulation by the State. We note that not all conduct claimed to have communicative purpose is protected as speech by the First Amendment. The Supreme Court has rejected the contention that the First and Fourteenth Amendments "afford the same kind of freedom to those who would communicate ideas by conduct * * * as these amendments afford to those who communicate ideas by pure speech". Cox v. Louisiana I, 379 U.S. 536, 555, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965). *See also* United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). We also recognize there can be no valid blanket assertion that the state has an absolute right to regulate all forms of conduct in public buildings when the exercise of First Amendment rights is claimed. *See* Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed. 2d 637 (1966) (public library). We are aware that permissible state regulation may not reach conduct intertwined with First Amendment freedoms of speech and petition, unless the actor or actors disrupt the uses to which the public has dedicated the property, or unreasonably interfere with the right of others to enter and leave the property. *See generally* Niemotko v. Maryland, 340 U.S. 268, 273–289, 71 S.Ct. 325, 95 L.Ed. 267 (1951) (Frankfurter, J., concurring); Note, Symbolic Conduct, 68 Colum.L.Rev. 1091 (1968).

The issues posed by plaintiffs, however, are not whether in either case here the conduct of plaintiffs could be constitutionally regulated by the State. As

they present it, the question is whether state and municipal officers have the power to use the trespass statute, chapter 266, section 120, to effect an absolute prohibition of permissible First Amendment activity within the municipal buildings where plaintiffs were found. Relying upon Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), plaintiffs claim relief, injunctive or declaratory, based on their assertion that the trespass statute is on its face an unconstitutional restraint on First Amendment freedoms and denies Fourteenth Amendment due process because of vagueness or overbreadth. They claim to be entitled to such relief irrespective of the conduct of plaintiffs and others present in Barnstable, and without regard to whether plaintiffs' conduct or the conduct of others present in Barnstable could be regulated or proscribed under a narrowly drawn statute.

■ Before dealing separately with the cases we refer to certain preliminary matters. At the outset of the hearing plaintiffs disclaimed any attack on the trespass statute as being unconstitutionally applied in these cases. Viewing this in light of the issues presented, we understand it to mean (at least) that plaintiffs do not challenge the good-faith administration by Massachusetts of the criminal laws relating to trespass in a public building. Whatever else the disclaimer embraces, or is intended by plaintiffs to embrace, it will be considered to the extent applicable. Secondly. It should be noted that after the complaints in these actions were filed the words "buildings * * * of another" in the trespass statute were interpreted by the Supreme Judicial Court to include buildings of the State and its municipalities. Commonwealth v. Egleson, 1969 Mass.Adv.Sh. 175, 177–178, 244 N.E.2d 589, appeal dismissed, cert. denied, 395 U.S. 336, 89 S.Ct. 1793, 23 L.Ed.2d 348 (1969). The Egelson court briefly traced the history of the trespass statute, noting that a predecessor had been applied to a criminal trespass upon public land in 1895.

Because Egleson had not been decided when the events involved here took place, we cannot rely on that decision as dispositive of the vagueness claim made here. But we unhesitatingly and independently reach the Egleson result. A member of the general public shares with every other member of the general public rights to use public property established by the Constitution, laws and regulations of the State. But this right to use public property is not an unlimited right. The Constitution, laws and regulations of the State limit as well as permit individual use of public property in the larger interest of the citizens of the State. The State acting through an agency thereof is readily distinguished from any particular member of the general public, and this long-recognized distinction serves to permit a man of "common intelligence" (Cameron v. Johnson, 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182 (1968), quoting from Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)) to understand that the phrase "of another" in the trespass statute refers to public property.

### A. The Barnstable case.

■ Turning now to the Barnstable case, we examine the evidence offered to this court which, presumably, will be offered in the prosecution of plaintiffs in the state court. It is not for us to determine whether the trespass statute has in fact been violated by plaintiffs, but our examination is occasioned by plaintiffs' argument that their conduct is not "hardcore conduct", that is, that this court cannot say it "would obviously be prohibited under any construction", Dombrowski v. Pfister, 380 U.S. 479, 492, 85 S.Ct. 1116, 1124, 14 L.Ed.2d 22, of the trespass statute. We disagree.

■ From the evidence offered to this court, we find that there was disruptive conduct on the part of plaintiffs which impeded and prevented normal use of the welfare office for the public purposes to which it was dedicated. We find that the director was addressed in the of-

fice by members of plaintiffs' group in loud and profane and obscene language threatening abuse, and that the group of about twenty persons, including plaintiffs, remained in the relatively confined working area after being requested to leave by the person in control following reasonable opportunity given them to present in a peaceful and orderly manner any grievance they might have in relation to their welfare claims. Prohibition of such conduct does not abridge constitutional liberty under the First and Fourteenth Amendments, since such actions overstep the bounds of protected freedoms of expression and petition.

 Although the "hard-core" nature of plaintiffs' conduct would appear to bar plaintiffs from asserting the unconstitutional vagueness of the statute under *Dombrowski*, we nevertheless turn to and reject their claim that the words "without right", as used in the trespass statute, are unconstitutionally vague. The words "without right" in the context of the historical concept of trespass can only mean: without any legal right; without any right, permission or license recognized by law as permitting an entry into the area described in the statute. The words can have no other meaning. The concept *legal right* in the context of today's constitutional developments includes any right of the plaintiffs, individually or collectively, found in the Constitution of the United States; and, since the trespass statute on its face purports to regulate conduct only, it is susceptible of such construction. This construction of the statute appears to be in harmony with the holding of the Supreme Judicial Court in Commonwealth v. Egleson, 1969 Mass.Adv.Sh. 175, 244

N.E.2d 589, appeal dismissed, cert. denied, 395 U.S. 336, 89 S.Ct. 1793, 23 L.Ed. 2d 348 (1969). *Egleson*, a case involving a prosecution under the trespass statute, held the question whether defendant was in a public building "without right", under circumstances where his claim of right rested on the First Amendment, depends upon the facts of each case. 1969 Mass.Adv.Sh. at 178, 244 N.E.2d at 592.

 The words "without right", when used in the context of a statute on its face proscribing only conduct, cannot be compared with the statutory words "without just cause or legal excuse" held unconstitutionally vague in Thornhill v. Alabama, 310 U.S. 88, 100, 60 S.Ct. 736, 743, 84 L.Ed. 1093 (1940). Unlike the instant case, *Thornhill* involved an Alabama statute, Code 1923, § 3448,[1] "purporting to license the dissemination of ideas". 310 U.S. at 97, 60 S.Ct. at 741. The Court found that "one or the other of the offenses [punishable under the statute] comprehends every practicable method whereby the facts of a labor dispute may be publicized in the vicinity of the place of business of an employer". 310 U.S. at 100, 60 S.Ct. at 743. Viewed in the context of a specific statutory prohibition of what were held to be constitutionally protected rights, the Court found that the qualifying phrase "without just cause or legal excuse" had no "ascertainable meaning either inherent or historical". *Id.* Here we do not have a statute purporting to bar exercise of constitutional rights. As used in the trespass statute, the words "without right" expressly save constitutional rights. In this context, the words "with-

1. The statute read as follows:
 Loitering or picketing forbidden.—Any person or persons, who, without a just cause or legal excuse therefor, go near to or loiter about the premises or place of business of any other person, firm, corporation, or association of people, engaged in a lawful business, for the purpose, or with intent of influencing, or inducing other persons not to trade with, buy from, sell to, have business dealings with, or be employed by such persons, firm, corporation, or association, or who picket the works or place of business of such other persons, firms, corporations, or associations of persons, for the purpose of hindering, delaying, or interfering with or injuring any lawful business or enterprise of another, shall be guilty of a misdemeanor; but nothing herein shall prevent any person from soliciting trade or business for a competitive business.
 310 U.S. at 91–92, 60 S.Ct. at 739.

out right" have sufficient "inherent" and "historical" meaning (*id.*) to permit a man of "common intelligence" (Cameron v. Johnson, 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182 (1968), quoting from Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)) to understand that remaining "in or upon the * * * buildings * * * of another, after having been forbidden so to do by the person who has the lawful control of said premises" without any legal right to remain may subject him to the sanctions of the trespass statute.

Plaintiffs further argue that they have standing to challenge the statute's constitutionality because, although it may be found validly applied to them, its overbreadth enables them to assert the First Amendment rights of others who may be drawn within its ambit. They rely upon Dombrowski v. Pfister, *supra,* 380 U.S. at 486–487, 85 S.Ct. at 1120–1122. But it is not enough merely to allege overbreadth of a statute to invoke a federal court to enjoin a pending state court proceeding on that ground, and *Dombrowski* is not authority to the contrary. In Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 1339, 20 L.Ed.2d 182 (1968), the Court said:

> *Dombrowski* recognized, 380 U.S., at 483–485 [85 S.Ct., at 1119–1120] the continuing validity of the maxim that a federal district court should be slow to act "where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court," Douglas v. City of Jeannette, 319 U.S. 157, 162 [63 S.Ct. 877, 880, 87 L.Ed. 1324]; see Zwickler v. Koota, *supra* [389 U.S. 241], at 253 [88 S.Ct. 391 at 398, 19 L.Ed.2d 444]. Federal interference with a State's good-faith administration / of its criminal laws "is peculiarly inconsistent with our federal framework" and a showing of "special circumstances" beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extra-

ordinary remedy of an injunction. 380 U.S., at 484 [85 S.Ct., at 1119, 1120]. We found such "special circumstances" in *Dombrowski.*

There has been so showing of any "special circumstances" in this case. There is no question of the good faith of defendants in prosecuting the plaintiffs in the state court under the trespass statute. There has not been any suggestion that defendants are enforcing the statute against plaintiffs only to discourage exercise of First Amendment rights with no expectation of conviction. The presumption that defendants' motive was law enforcement in prosecuting plaintiffs has not been challenged, let alone overcome, in the slightest.

Moreover, the statute is not overbroad if construed, as above noted, to allow entry on public property for the purpose of exercising First Amendment rights. Such a construction eliminates the "danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application". N. A. A. C. P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Thus assuming plaintiffs have standing to challenge the statute on grounds of its asserted overbreadth, we have found it not to be overbroad.

### B. *The Somerville case.*

All evidence before this court concerning the Somerville case is contained in a statement of facts agreed to by defendants. In contrast with the situation in the Barnstable case, there is no evidence of any disruption by plaintiff. There is no evidence that any function of the Somerville welfare office was in any way impeded or even briefly disrupted. Plaintiff was alone. Although the action was brought as a class action, the class action aspects of the case were dismissed during oral argument for the reason that there were no allegations or proof of the existence of others similarly situated.

The use to which the Somerville welfare office is dedicated by the

State and the municipality in the furtherance of the public business is more restricted than the use members of the public may make of a public amphitheater, terminal, public park, or sidewalk. Certainly the State need not permit every purported exercise of a First Amendment freedom to take place there. Plaintiff, however, was not publicizing a protest unconnected with the welfare office; what she did can be characterized as speech and conduct incidental to formulating a petition for redress of a grievance having its root in the functions of the welfare office and likely having a particular affect on most members of the general public who would visit that office. The merit, or lack of merit, of her petition for redress of grievance has nothing to do with the issue before the court.

No decision of the Supreme Court appears to directly control the situation presented here. We believe, however, that the First Amendment guarantees of speech and petition, as articulated and applied in cases such as Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966) (sit-in in public library), and Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed. 2d 697 (1963) (picketing on state house grounds), permit a strong argument to be made that plaintiff, in the circumstances described here, was upon public property "with right" within the meaning of the trespass statute.

We need not decide that issue, however, because we have found the trespass statute constitutional and we do not sit as a three-judge court to hear a claim that a constitutional statute has been or may be erroneously applied. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Landry v. Daley, 288 F.Supp. 194 (N.D. Ill.1968). Moreover, plaintiff has expressly disclaimed an attack on the statute as applied. Thus nothing remains for disposition before the single judge who originally drew this action.

The relief requested in each case was that we declare the trespass statute unconstitutional. We have not been asked to make any other declaration. Therefore, it is ordered that judgment in both actions shall enter for the defendants.