STATE OF HAWAII, Plaintiff-Appellee, *v.* IRINA JORDAN, Defendant-Appellant

No. 5137

August 25, 1972

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

Appellant, Irina Jordan, appeals from her conviction in circuit court wherein the jury found her guilty of trespass under Hawaii Revised Statutes § 771-1.

Appellant was charged that she "on or about the 24th of April, 1970, did, without right, enter or remain upon the Air Force ROTC 1 Building, the improved premises of another, to-wit, the private property of the University of Hawaii, located at 2444 Dole Street, in said Honolulu, after having been forbidden so to do by said Harlan Cleveland, the person having lawful control of said premises . . . ."

Testimony at trial established that the demonstration through which this case arose involved roughly two hundred people congregating around the ROTC complex at the university for a period of five days in protest over the war in Indo-China. Appellant, a student at the university, was among a group of forty students and faculty who staged a sit-in at one of the ROTC buildings housing faculty offices. Harlan

Cleveland, president of University of Hawaii, confronted the group of people engaged in the sit-in and read a statement informing them that the sit-in was not a valid protest but an illegal act and that anyone remaining in the building would be prosecuted for criminal trespass. Subsequently appellant was arrested along with other remaining protestors identified at the scene by university officials. President Cleveland testified that because of the sit-in, classes and activities at the ROTC building were discontinued for the duration of the demonstration.

Appellant asserts that the language of the statute under which she was convicted is unconstitutionally vague and overbroad. We find such a position to be without merit.

The statute in effect at the time appellant was charged, HRS § 771-1 (since repealed), provides as follows:

> Trespass; penalty. Whoever, without right, enters or remains in or upon the dwellinghouse, buildings, or improved or cultivated lands of another or the land of another about or near any buildings used for dwelling purposes, after having been forbidden to do so by the person who has lawful control of such premises, either directly or by notice posted thereon, and any person who wilfully tears down or defaces any such notice, shall be fined not more than $250, or imprisoned not more than three months, or both; provided, that entry upon or passing along or over established and well-defined roadways, pathways, or trails leading to public beaches over government lands, whether or not under lease to private persons, shall not of itself constitute the offense of trespass, and anyone entering upon or passing along or over any such roadway, pathway, or trail on his way to or from a public beach shall be liable only for such actual physical damage as he may cause in so doing.

### "LANDS OF ANOTHER"

It is initially argued that the phrase "lands of another" is vague in that it does not provide sufficient notice that public lands are included within the purview of § 771-1.

We cannot agree. In this context, the obvious meaning imparted by the words "of another" is that one is capable of being a trespasser when ownership of the land one is occupying rests in any entity other than oneself, either as an individual or co-owner. The fact that an individual, as a member of the public, has an interest in all public property does not mean that such an individual cannot commit a trespass on certain publicly owned property where his presence is not authorized.[1] In relation to this point we adopt the analysis of the court in *Hurley v. Hinckley*, 304 F. Supp. 704, 709 (D. Mass. 1969), *aff'd*, 396 U.S. 277 (1970), in construing a similar statute:[2]

> A member of the general public shares with every other member of the general public rights to use public property established by the Constitution, laws and regulations of the State. But this right to use public property is not an unlimited right. The Constitution, laws and regulations of the State limit as well as permit individual use of public property in the larger interest of the citizens of the State. The State acting through an agency thereof is readily distinguished from any particular member of the general public, and this long-recognized distinction serves to permit a man of "common intelligence" (Cameron v. Johnson, 390 U.S. 611, 616, 88 S.Ct. 1335,

---

[1] A reading of § 771-1 in its entirety lends support to the position that "lands of another" includes public land. The clause "provided, that entry upon or passing along or over established and well-defined roadways, pathways, or trails leading to public beaches over *government* lands, whether or not under lease to private persons, shall not of itself constitute the offense of trespass" (emphasis added) suggests that if the land being occupied is government land but not the type included above then such an occupation would constitute a trespass under § 771-1.

[2] "Massachusetts General Laws, chapter 266, section 120 (trespass Statute), which in pertinent part provides:

"Whoever, *without right*, enters or remains in or upon the dwelling house, buildings, boats or improved or enclosed land, wharf or pier *of another*, after having been forbidden so to do by the person who has the lawful control of said premises, either directly or by notice posted thereon, shall be punished by a fine of not more than twenty dollars." (Emphasis added.)
Hurley, *supra*, 304 F. Supp. at 707.

1338, 20 L.Ed.2d 182 (1968), quoting from Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)) to understand that the phrase "of another" in the trespass statute refers to public property.

### "WITHOUT RIGHT"

We agree with appellant that the phrase "without right" in § 771-1 includes not only rights derived from the entity in ownership or authoritative control over the property in question but constitutional rights as well.[3] As such, if appellant's conduct was in proper exercise of a constitutional right, appellant could not be held in violation of the statute.

The U. S. Supreme Court has held that "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines*

---

[3] The court in Hurley, *supra,* reached the same result in its construction of a trespass statute containing the phrase "without right" and other language similar to that confronting us today:

The words "without right" in the context of the historical concept of trespass can only mean: without any legal right; without any right, permission or license recognized by law as permitting an entry into the area described in the statute. The words can have no other meaning. The concept *legal right* in the context of today's constitutional developments includes any right of the plaintiffs, individually or collectively, found in the Constitution of the United States; and, since the trespass statute on its face purports to regulate conduct only, it is susceptible of such construction.

As used in the trespass statute, the words "without right" expressly save constitutional rights. In this context, the words "without right" have sufficient "inherent" and "historical" meaning *(id.)* to permit a man of "common intelligence" (Cameron v. Johnson, 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182 (1968), quoting from Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)) to understand that remaining "in or upon the * * * buildings * * * of another, after having been forbidden so to do by the person who has the lawful control of said premises" without any legal right to remain may subject him to the sanctions of the trespass statute.

304 F. Supp. at 710-11.

*Independent Community School District*, 393 U.S. 503, 506 (1969).

It must be recognized, however, that we are not today dealing with "pure speech" and that appellant's right to express protest is not absolute. We recognize that " [a ]lthough it may be taken as settled that a college student, by his enrollment, is not stripped of his constitutional right to engage in 'symbolic' speech in the form of demonstrations of protest, this does not mean that the exercise of such right is absolute and unlimited." *Sword v. Fox*, 446 F.2d 1091, 1095-96 (4th Cir. 1971). Merely because a state university is essentially a public institution subject to public use, this "does not authorize either the general public or the university faculty and students to use them in a way which subverts their purpose and prevents their intended use by others. The public character of a university does not grant to individuals a license to engage in activities which disrupt the activities to which those facilities are dedicated."[4]

Although the trespass statute, HRS § 771-1, is not aimed at regulating speech or communication in any form, appellant's continued unauthorized physical presence in the ROTC building after she was requested to leave by the president of the university constituted a direct contravention of that statute. Clearly, appellant's conduct was in abuse of any right of protest she may have had at that time for "[i]t can scarcely be argued that demonstrations in a classroom or administration building . . . would not create a disruption in the educational activity of the institution and inconvenience its normal administrative operations."[5] *Sword v. Fox, supra*, 446 F.2d at 1097.

---

[4]Wright, *The Constitution on the Campus*, 22 VAND. L. REV. 1027, 1040 (1969), quoting from A. Fortas, CONCERNING DISSENT AND CIVIL DISOBEDIENCE 46-47 (1968).

[5]In a case strikingly similar to the instant case, involving a sit-in by university students and faculty at a ROTC facility on campus where the defendant had defied a directive of the administration to leave the building promptly, the court pointed out that by defendant's presence "the normal work of the university in

OVERBREADTH

We have construed § 771-1 as allowing for entry on public property for the purpose of exercising protected constitutional rights. Therefore the statute cannot be considered overbroad and susceptible to improper application against First Amendment guarantees. *See N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963).

It is important to note that this case, given its university setting, has included within its facts the kind of constitutionally protected activity that, under the right time, manner and place, should be freely upheld. It is not appropriate at this time that we attempt to draw distinctions between the various types of expression or speech that are currently being utilized in protest or the various facilities and areas of the university where such expression takes place. It is sufficient that we recognize that "expression can be prohibited if it takes the form of action that materially and substantially[6] interferes with the normal activities of the institution or invades the rights of others." Wright, *The Constitution on the Campus*, 22 Vand. L. Rev. 1027, 1046 (1969).

Affirmed.

*John Chang*, Deputy Public Defender (*James Blanchfield*, Deputy Public Defender, on the memorandum) for defendant-appellant.

*Michael A. Weight*, Deputy Prosecuting Attorney (*Barry Chung*, Prosecuting Attorney, with him on the brief) for plaintiff-appellee.

---

holding an ROTC class and the rights of other students to attend that class were impeded." Rozman v. Elliott, 335 F. Supp. 1086, 1097 (D. Neb. 1971).

[6]The "materially and substantially" test was utilized by the U. S. Supreme Court in Tinker, *supra*, 393 U.S. at 513.