STATE OF HAWAII, Plaintiff-Appellee,
*v.* EVELYN KIMBALL, also known as
Evelyn Hammond Kimball, Defendant-Appellant

No. 5166

NOVEMBER 10, 1972

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by Evelyn Kimball, the defendant, from her conviction and sentence for unlawful possession of harmful drugs in violation of HRS §§ 328-82 (3), 328-84 (a) and 328-86 (c).

## FACTS

On the afternoon of June 11, 1970, while school was out for the summer, the defendant and four others were sitting under a tree on school grounds. Upon a complaint from an unknown person, the defendant and others with her were arrested for being unlawfully on school premises in violation of section 13-5.1 of the Revised Ordinances of Honolulu. After the arresting officer frisked the others for weapons, he noticed the defendant walking around the tree with her left hand concealed behind her. He asked the defendant what she had in her hand. The defendant said "nothing" but the arresting officer grabbed her hand, determined to find out whether defendant had a weapon, whereupon defendant dropped to the ground two small packages of drugs. Thereupon defendant was charged for the unlawful possession of harmful drugs in violation of HRS §§ 328-82 (3), 328-84 (a) and 328-86 (c).

Prior to trial the defendant moved to suppress the drugs taken incident to her arrest alleging that the arrest upon which the search was based was made pursuant to:

(1) An ordinance (section 13-5.1 of the Revised Ordinances of Honolulu) which was void, hav-

ing been pre-empted by HRS § 727-24 and Act 97, S.L.H. 1965; and

(2) An ordinance that is unconstitutional for vagueness and overbreadth.

Upon denying the defendant's motion to suppress, the trial court held the following:

(1) Though the arrest was made pursuant to a city ordinance (section 13-5.1, Revised Ordinances of Honolulu), the legality of such arrest does not stand or fall on the question of validity of the pre-empted ordinance so long as defendant's conduct concurrently violates a state statute of similar import.

(2) HRS § 727-24 satisfies the pre-emption provision of HRS § 70-105 and thus pre-empts section 13-5.1, Revised Ordinances of Honolulu. Therefore the constitutionality of the latter ordinance need not be decided.

(3) HRS § 727-24 is not unconstitutionally vague and thus supports the reasonableness of the search of the defendant incident to her arrest.

Thereafter, upon trial, defendant was found guilty of the crime charged.

Defendant was arrested initially for violating section 13-5.1 of the Revised Ordinances of Honolulu. Said section 13-5.1 provides as follows:

No person shall go or remain upon, loiter around, in or upon or play or engage in any game in or upon any public school buildings or public school grounds, without lawful business or excuse for so doing.

The same subject matter is dealt with in HRS § 727-24 which provides:

§727-24 *Intruding, loitering, loafing, or idling on school premises; penalty.* Any person intruding, or loitering, or loafing, or idling, without proper authority upon the premises of any school, public or private, of any school dormitory, or of the Hawaii

youth correctional facilities, may be arrested by any police officer, without any warrant, and on the complaint of the principal or other person in charge of the school, or of any trustee of the same; upon conviction thereof he shall be fined not more than $200 or imprisoned not more than six months, or both. Nothing in this section shall be construed (1) to preclude the right of the parent, or legal guardian, or other person having written permission of the parent to take custody of a student during regular school hours, and (2) to preclude the punishment of the offender for any other offense committed on the premises, nor of the right of action for civil damages.

### PRE-EMPTION OF THE CITY ORDINANCE

HRS § 70-105 provides:

§70-105 *Effect of state statutes.* No ordinance shall be held invalid on the ground that it covers any subject or matter embraced within any statute of the State; provided that the ordinance is not inconsistent with and does not tend to defeat the intent or object of the statute or of any other statute; provided *also that the statute does not disclose an express or implied intent that the same shall be exclusive, or uniform throughout the State.* (Emphasis added.)

The trial court found that HRS § 727-24 clearly pre-empted section 13-5.1 of the Revised Ordinances of Honolulu on the basis of *In re Application of Anamizu,* 52 Haw. 550, 481 P.2d 116 (1971). In construing the express or implied intent provision of HRS § 70-105 this court, in *Anamizu,* held that the existence of a comprehensive state statute regulating the licensing of contractors demonstrated an implied intent to be the exclusive legislation in the field and to pre-empt a similar city ordinance.

In finding that the legislature intended HRS § 727-24 to be the exclusive legislation in the area, the trial court considered the fact that although the city and county of Honolulu originally had a proprietary interest in the school grounds and buildings, it was divested of this function in 1965 when the state took control over school construction and management.[1]

We find that the trial court correctly held that HRS § 727-24 pre-empted section 13-5.1 of the Revised Ordinances of Honolulu and that the statute evinced an implied intent to be the exclusive legislation in the area.

Notwithstanding the fact that a pre-empted ordinance is void and incapable of supporting a valid arrest, if the defendant's conduct is also violative of a similar state statute, the arrest may nevertheless be valid. That being the situation here, it is of no effect that the arresting officer had the ordinance in mind rather than the statute when effecting the arrest. The point of importance is that the facts and circumstances within the officer's knowledge afforded probable cause to arrest under either the ordinance or the statute. *Brinegar* v. *United States*, 338 U.S. 160 (1949); *State* v. *Chong*, 52 Haw. 226, 473 P.2d 567 (1970).

### IS HRS § 727-24 VOID FOR VAGUENESS?

Appellant claims that the words "loiter"[2] and "without proper authority" contained in HRS § 727-24 are unconstitutionally vague.

The law is clear that if a penal statute, by its terms,

---

[1]Section 4 of Act 97, Session Laws of Hawaii 1965 provided:
The state department to which functions have been assigned by the Governor shall succeed *to all the rights and powers exercised,* and *all of the duties and obligations incurred* by the counties in the exercise of the functions transferred, whether such powers, duties and obligations are mentioned in or granted by any law, contract or other documents; . . . (emphasis added).

[2]Appellant makes a claim but gives no argument that the word loiter is vague. The word loiter must be construed in the context of the rest of the statute and is not per se unconstitutionally vague. Ricks v. United States, 414 F.2d 1111 (D.C. Cir. 1968).

does not sufficiently describe nor give fair notice of those acts which it forbids, the statute is of vague meaning and runs afoul of the "due process" protections of the fourteenth amendment of the United States Constitution and article I, section 2 of the Hawaii State Constitution. *Connally* v. *General Construction Company,* 269 U.S. 385, 391 (1926) ; *State* v. *Miller,* 54 Haw. 1, 501 P.2d 363 (1972) ; *State* v. *Grahovac,* 52 Haw. 527, 534-35, 480 P.2d 148, 153 (1971) ; *State* v. *Abellano,* 50 Haw. 384, 385, 441 P.2d 333 (1968) ; *Territory* v. *Naumu,* 43 Haw. 66, 68 (1958) ; *Territory* v. *Anduha,* 31 Haw. 459 (1930) , *aff'd* 48 F.2d 171 (9th Cir. 1931) . Further, a law of vague meaning which prescribes no fixed standard by which guilt may be adjudged renders the guilt of an accused person subject to the whim or caprice of the policeman on the beat, the judge or the jury. *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 402-03 (1966) ; *Shuttlesworth* v. *Birmingham,* 382 U.S. 87, 90 (1965) .

We cannot say that the "without proper authority" clause of HRS § 727-24 fails to give fair notice of the conduct that it forbids.

In determining the meaning of a statute, laws in *pari materia,* or upon the same subject matter, will be construed with reference to each other.[3] Besides said HRS § 727-24, HRS § 298-23 also deals with the use of school premises. HRS § 298-23 provides as follows:

§298-23 *Use of school facilities for recreational and community purposes.* All public school buildings, facilities, and grounds shall be available for general recreational purposes and for public and community group meetings, whenever these activities do not interfere with the normal and usual activities of the school, and its pupils, concerned. Any law or portion of any law to the contrary notwithstanding,

---

[3]HRS § 1-16 provides:
Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.

the department of education and the departments and officials of the several counties entrusted with the control, supervision, and care of school buildings, facilities, or grounds shall issue such rules and regulations as are deemed necessary to carry out the purposes of this section.

Thus, it is clear that HRS § 298-23 provides, *inter alia,* that the department of education shall issue rules and regulations to determine when use of school premises is or is not authorized. In his decision on the motion to suppress, the trial judge recognized the fact that the department of education had promulgated a substantial set of rules covering the following areas:

(1) What and when particular uses of school premises are authorized. Rules 3, 4, 5, 6.4, 6.5, 6.6, 6.7, 6.8 (c) 1-4 of Departmental Rules and Directives, Department of Education, State of Hawaii, 1969, 7000 Series (adopted by Board of Education on March 4, 1971).

(2) How authorization may be procured for particular uses of school premises. Rules 6.2 and 6.3 specifically provide:

6.2 *Applying for Use.* Applications for the use of buildings, facilities or grounds must be submitted in writing in accordance with the Department's Administrative Regulations.

6.3 *Approvals.* Authority to approve the use of buildings, facilities or grounds is vested in the District Superintendent or his designated representative.

Generally, administrative rules and regulations promulgated pursuant to statutory authority have the force and effect of law.[4]

It is apparent that any use of school premises not

---

[4]Davis, ADMINISTRATIVE LAW TEXT § 5.03 at 126.

In State v. Lee, 51 Haw. 516, 522, 465 P.2d 573, 577 (1970), we held that regulations promulgated by the Coordinator (Traffic) gave sufficient warning

authorized by the departmental rules is "without proper authority". Thus we are of the opinion that since the said laws in *pari materia* give fair notice of the meaning of "without proper authority", HRS § 727-24 is not unconstitutionally vague.

### OVERBREADTH

Appellant claims that her conduct, innocent in all respects, was indiscriminately proscribed by the broad sweep of HRS § 727-24. In *Anduha* this court considered the concept of statutory overbreadth and stated at 462:

> A criminal statute that is so broad in its prohibitive terms as to include acts that are inherently harmless as well as acts which are potentially dangerous, cannot, for constitutional reasons, be upheld.

Since the state is charged with the duty of public education, there is no question that the state may regulate activity on school premises as a valid exercise of its police power. However, this court has recognized that, as broad as this police power may be, it is not plenary and may not infringe on those fundamental rights common to all. *Anduha, supra* at 460.

In *Anduha* this court struck down a loitering statute as being overbroad because it infringed on the constitutionally protected freedom of locomotion or movement. Though not express, this court has recognized that the freedom of movement clearly inheres in the right to life, liberty and the pursuit of happiness as guaranteed by the Hawaii and United States Constitution. *Abellano, supra* (Levinson, J., concurring) at 386-87.

No similar right exists in this case. We are of the opinion that one does not have a constitutional right to

---

to satisfy due process.

Also HRS § 91-1 on administrative procedure defines "rule" as . . . each agency statement of general or particular applicability and *future* effect that implements, interprets or *prescribes law* or policy . . . (emphasis added).

go upon school premises at any time and for any reason that he may choose. *Anduha* involved loitering on a public street. Though school property is public in the sense that it is government property, it is not public in the sense that it is subject to unfettered public use. The state interest is such that total exclusion of all persons without proper authority is a perfectly reasonable exercise of its police power. *People* v. *Johnson,* 6 N.Y.2d 549, 552, 161 N.E.2d 9, 10 (1959). *See also State* v. *Jordan,* 53 Haw. 634, 500 P.2d 560 (1972). Thus, we are of the opinion that HRS § 727-24 cannot be deemed unconstitutionally overbroad and for that reason both the defendant's arrest and the search incident thereto are valid.

Justice Abe in his dissenting opinion raises the following issue: A police officer cannot arrest an offender without a warrant of arrest if the officer had not, prior to the arrest, received "a complaint by the principal or other person in charge".

The appellant's appeal, however, was premised strictly on constitutional grounds.

Supreme Court Rule 3 (b) (3) provides that questions not presented in appellant's brief on appeal will be disregarded.

Affirmed.

*Brook Hart,* Special Deputy Public Defender (*James Blanchfield* with him on the briefs; *Donald Tsukiyama,* Public Defender, of counsel) for defendant-appellant.

*Leland Spencer,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney, and *Erick T. S. Moon,* Deputy Prosecuting Attorney, on the brief) for plaintiff-appellee.

---

DISSENTING OPINION OF ABE, J.,
WITH WHOM LEVINSON, J., JOINS

As to this court's holding that HRS § 727-24 preempts Section 13-5.1 of the Revised Ordinances of Hono-

lulu, I believe that issue was correctly decided. I do not agree, however, with its disposition of the case, nor the reasoning supporting the affirmance of the circuit court's decision.

There are two aspects to the first sentence of HRS § 727-24.[1] First, it makes it an offense for any person to intrude, or loiter, or loaf, or idle, without proper authority upon the premises of any school, public or private. Secondly, HRS § 727-24 grants authority to a police officer to arrest without a warrant. In order for the arrest without a warrant to be valid, however, it must be predicated "on the complaint of the principal or other person in charge."

This court in *Territory* v. *Hoo Koon,* 22 Haw. 597, 602 (1915) held that under the provisions now codified in HRS Ch. 708 "[t]he right of a policeman to arrest without a warrant is not limited to felonies." It cannot be presumed that the authority to arrest without a warrant granted in HRS § 727-24 is surplusage and merely restates the authority bestowed upon police officers in HRS Ch. 708. It cannot be presumed that the legislature intended to enact an unnecessary law. *In re Hawaiian Land Co.,* 53 Haw. 45, 60-61, 487 P.2d 1070, 1080 (1971); *Levy* v. *Kimball,* 51 Haw. 540, 545, 465 P.2d 580, 583 (1970); *Cooper* v. *Island Realty Co.,* 16 Haw. 92, 99 (1904); *In re Pringle,* 22 Haw. 557, 564 (1915). Therefore, I believe the more reasonable construction of HRS § 727-24 is that the requirement of a complaint by the principal or other person in charge is a condition on the police officer's authority to arrest without a warrant for a violation of this particular statute.

The record indicates, and this court noticed, that

---

[1]The first sentence of HRS § 727-24 reads:

"Any person intruding, or loitering, or loafing, or idling, without proper authority upon the premises of any school, public or private, including any female boarding school, Kawailoa Girls' Home and school dormitories, may be arrested by any police officer, without any warrant, and on the complaint of the principal or other person in charge of the school, or of any trustee of the same; . . . ."

the complaint came from an unknown person, not the principal or other person in charge. Not being predicated on the complaint of a principal or other person in charge, the police officer, therefore, did not have the necessary authority to arrest appellant Kimball and carry out a warrantless search of her person incident thereto. For this reason, I would reverse the conviction of the trial court.

I also believe that the appellant had proper authority to be on the premises. HRS § 298-23 states:

> "*Use of school facilities for recreational and community purposes.* All public school buildings, facilities, and grounds shall be available for general recreational purposes and for public and community group meetings, whenever these activities do not interfere with the normal and usual activities of the school, and its pupils, concerned. Any law or portion of any law to the contrary notwithstanding, the department of education and the departments and officials of the several counties entrusted with the control, supervision, and care of school buildings, facilities, or grounds shall issue such rules and regulations as are deemed necessary to carry out the purposes of this section."

It is neither within the public's everyday experience, nor within the legislative intent of HRS § 298-23 that all activities on school premises receive the prior approval[2] of the Department of Education. When school is not in session, it is common to see children engaging in informal games on the school yard or using the playground equipment. Likewise, adults are often observed strolling through school grounds or merely resting on the premises. Certainly it was the clear intent of the legislature in enacting the provisions of HRS § 298-23

[2] Rule 6.2, Departmental Rules and Directives, Department of Education, State of Hawaii 1969, 7000 Series, requires a written request for permission to use school facilities. Rule 6.3 authorizes the District Superintendent to pass upon such application.

to allow activities as just mentioned when it does not interfere with "normal and usual activities of the school and its pupils."[3] This court's interpretation of HRS § 298-23, however, has a contrary effect.

If all public school grounds are to be available for general recreational purpose, the public must be able to go upon the premises. Thus, I believe HRS § 298-23 authorizes presence on a public school's premises unless it may interfere with normal and usual school activities.

The proviso that the department promulgate regulations to further the purpose of the statute relates to regulating public use of school premises that might interfere materially with normal school activities. The Department of Education has promulgated such rules. The department's rules, however, do not in any way attempt to regulate non-disruptive informal use of school grounds. Rule 6 does not establish any requirements as to obtain-

---

[3]HRS § 298-23 was enacted as Joint Resolution 6 in 1953. The resolution reads as follows:

"J.R. 6

Joint Resolution Providing for the Use of Public School Buildings, Facilities and Grounds for Community and Recreational Purposes.

WHEREAS, school buildings, facilities, and grounds are public property and it is good public policy in a democracy to maximize the beneficial use of such property by the widest possible public; and

WHEREAS, school buildings and grounds are not generally in use in the late afternoons, over weekends, and during the summer months; and

WHEREAS, there is a shortage in this Territory of public parks, playgrounds, and picnic areas, and also of suitable meeting places for precinct clubs, service clubs, and other community organizations; and

WHEREAS, schools have, in the American tradition, served not only as educational centers but also as social and community centers; now, therefore,

Be it Enacted by the Legislature of the Territory of Hawaii:

SECTION 1. All public school buildings, facilities, and grounds shall be available for general recreational purposes and for public and community group meetings, whenever these activities do not interfere with the normal and usual activities of the school, and its pupils, concerned. Any law or portion of any law to the contrary notwithstanding, the department of public instruction and the departments and officials of the City and County and other counties of the Territory of Hawaii entrusted with the control, supervision and care of school buildings, facilities and grounds are hereby authorized and directed to issue such rules and regulations as are deemed necessary to carry out the purposes of this Joint Resolution.

SECTION 2. This Joint Resolution shall take effect upon its approval."

ing authority to be on school grounds for informal uses such as appellant Kimball was engaged in. In fact, even if appellant Kimball desired to apply for the use of the Central Intermediate School ground, she could not have done so under Rule 6 as procedures for handling such applications are not established therein.[4] To say that no person may use school grounds and facilities merely because the department's regulations failed to establish procedures to obtain lawful authority to do so rubs the grain of policy contained in HRS § 298-23 in the wrong direction.

It is apparent that Rule 6 attempts to regulate use of school grounds, facilities and buildings which would

---

[4]Rule 6.8 established the procedures to obtain approval for use of school premises:

"6.8 *Procedures for Approval, Fees and Service Charges*

The following procedures are established to provide for uniform application of Rule 6, relating to the use of school buildings, facilities and grounds.

a. *Category of Use*

*Type I.* Public school PTA, school, department or other governmental agency sponsored or co-sponsored meetings, classes and other activities to serve the patrons of the school and the community.

*Type II.* Community associations or youth clubs sponsored by a non-profit community organization to hold meetings, classes or other activities to which no admission charge is made, collection taken or donation received.

*Type III.* All other educational, recreational or service groups in which membership is open to the general public and conducting community affairs to which no admission charge is made, collection taken or donation received.

*Type IV.* All other educational, recreational or service groups in which membership is open to the general public and conducting community affairs to which admission charge is made, collection taken or donation accepted.

b. *Approvals*

*Type I and II use.* Application shall be filled out by applicant and processed by the principal.

*Type III and IV use.*

(1) Applicant fills out the Application for the Use of School Buildings and/or Grounds form and submits it to the principal.

(2) Principal makes his recommendation and forwards the form to the District Superintendent for final approval.

(3) District Superintendent or his designated representative approves or disapproves application and returns copies to principal and applicant."

Plainly, appellant Kimball did not fall in any of the four categories.

tend to disrupt normal school activities. For example, Rule 6.8c establishes fees for use of auditoriums, cafetoriums, classrooms, fieldhouses, gymnasium, gymnatoriums, swimming pools and grounds for carnivals and fairs. Unregulated use of these facilities and of the grounds for carnivals and fairs would materially upset normal school activities and such regulations are therefore within the authority delegated by the legislature to the department to promulgate these rules. If the department had attempted to exclude all use except that provided by the rules, regardless of whether any of the uses interfered with normal school activities, it would clearly exceed the scope of authority delegated to it. Since merely sitting around under a tree on a public school ground, as the arresting officer testified appellant Kimball was doing at the time he approached them, falls within the general understanding of the term "recreation," and since the activities of appellant Kimball in no way disrupted normal school activities, I would hold that the police officer had no probable cause to arrest defendant Kimball for idling on school premises without proper authority, and the subsequent search of her person and seizure of drugs was, therefore, invalid. I would reverse the circuit court's conviction since the motion to suppress the evidence seized was improperly denied.

Finally even assuming, as we now must, that "proper authority" to be on public school premises can be granted presently only by the Department of Education, the record does not show that any evidence was produced that indicated the arresting officer had probable cause to believe that appellant Kimball was upon school premises without proper authority. The police officer testified that he asked appellant Kimball and her companions if they had any lawful reason for being on the school ground. They answered "no." While such investigation would tend to support an officer's reasonable belief that appellant Kimball was idling, loafing or loitering, it

does not, it seems to me, indicate that she admitted to being on the premises without some proper authority.

Construed in light of HRS § 298-23, "without proper authority" as used in HRS § 727-24 must mean doing of acts which would tend to materially disrupt normal school activities. There is no evidence to indicate that appellant Kimball or her companions were, under the circumstances, doing anything that would lead a police officer to have probable cause to believe a material disruption of normal and usual school activities were being or about to be materially disrupted.

Even under this court's interpretation of HRS § 727-24, therefore, the arresting officer did not have probable cause to arrest appellant Kimball. The fruits of the search and seizure conducted pursuant to an invalid arrest should not have been allowed into evidence.

I dissent.