EDMUND FITZGERALD *vs.* JAMES H. LEWIS & another.

QUARTUS J. SMITH *vs.* SAME.

ANDREW J. PETERSEN *vs.* SAME.

Hampden.   September 25, 1895. — October 19, 1895.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Statute — Effect of Amendment — Trespass on Land — Notice to Trespasser —
Defence — Evidence.*

If a statute recites that a previous statute "is hereby amended so as to read as
follows," and then enacts a somewhat different provision from that contained in
the prior statute, but upon the same subject matter, the effect of the amend-
ment is to substitute the language of the new statute for that of the old one,
and other statutory provisions relating to the old statute, and not inconsistent
with the new one, apply to the latter after that statute takes effect.

The overseers of the poor of a city, if in control of its poor farm, have authority
to post notices on the land forbidding trespass thereon.

The notice authorized by St. 1890, c. 410, to be posted on land, forbidding trespass
thereon, need not be signed.

A belief on the part of a person entering upon land not in his control that the
land is his is no defence to a complaint for a violation of St. 1890, c. 410, for-
bidding an entry without right upon the improved or enclosed land of another.

Where a notice forbidding trespass on land is posted by the person having the law-
ful control thereof, it is not necessary, in order to convict a person of a violation
of St. 1890, c. 410, to prove that he actually saw such notice, if it was reasonably
distinct, and was posted in a reasonably suitable place, so that by the exercise
of due care it would be seen by him.

In an action for false imprisonment, evidence that the plaintiff was acquitted at the
trial of the offence for which he was arrested is not admissible.

THREE ACTIONS OF TORT, for assault and false imprison-
ment.   The cases were tried together in the Superior Court, be-
fore *Dewey*, J., who allowed a bill of exceptions, in substance as
follows.

The defendants were police officers of the city of Springfield,
and justified the arrest of the plaintiff under Pub. Sts. c. 203,
§§ 99, 100, and St. 1890, c. 410.

The plaintiffs were arrested without warrants, and confined
in the lock-up several hours until released on bail, and com-
plaints and warrants were issued against them on the next day
within twenty-four hours, upon which all were subsequently
tried by the Police Court of Springfield.   The plaintiff Fitz-

gerald was part owner of premises adjoining real estate of the city of Springfield, the last named land being a part of the poor farm on which the almshouse was situated; and for some time there had been a dispute between the city and Fitzgerald concerning the boundary line between his premises and that of the city.

The plaintiff Smith was a civil engineer, and the plaintiff Petersen was in the employ of Fitzgerald as a laborer. Upon the day of the arrest, all three plaintiffs were on the premises both of the plaintiff Fitzgerald and of the city of Springfield, Smith being there for the purpose of making a survey to determine the disputed line, and the other plaintiffs assisting him. Smith was employed by Fitzgerald to do the work.

The defendant Lewis was the legally appointed agent of the board of overseers of the poor of said city, and, by direction of the board prior to the arrests, caused to be posted in two places upon the land of the city, where they could have been seen, the following notice: " Trespassing on these grounds forbidden under penalty of the law." Lyman H. Sexton, employed by the overseers of the poor as master of the almshouse and the manager of the farm, by direction of Lewis, prior to the day of the arrests, had orally notified the plaintiff Fitzgerald not to come upon the land of the city.

Fitzgerald, on the day of and prior to the arrests, had seen one of the notices upon the land. The other two plaintiffs had had no oral notice, such as was given Fitzgerald, and testified that they had not seen the posted notices; but there was evidence tending to show that the notices were fastened to stakes driven in the ground, and were about four feet in height.

The defendants put in evidence the following provisions of the revised ordinances of the city:

" The overseers of the poor shall annually, on or before the 20th day of December, report to the city council their proceedings in the discharge of the duties of their office, with a statement of their expenditures, the expenses and income of the city farm, with the number of persons supported at the almshouse, and of those wholly or partially supported out of it, and the amount paid for the latter.

" The overseers of the poor shall annually, as soon after their

election as may be convenient, appoint some suitable person to be master of the city almshouse, who shall hold his office for one year, and until his successor is appointed, unless sooner removed by said overseers of the poor."

There was evidence tending to show that the overseers of the poor had been, and were in fact, in control of the farm.

There was also evidence tending to show that one Slocum, the present and past city engineer of Springfield, while such engineer, several years before this occasion, had made attempts to determine the disputed line, but there was no evidence of authority for him so to do.

The plaintiffs offered to show by the record of the Police Court of Springfield the acquittal of the plaintiffs Smith and Petersen on the complaint for the alleged trespass; but the judge excluded the evidence.

The plaintiffs asked the judge to rule as follows:

" 1. The arrest having been made without a warrant, the plaintiffs are entitled to recover. 2. There is no evidence that the overseers of the poor had authority to post the notices. 3. The overseers of the poor, under said ordinance, had no authority to post said notices or to authorize the agent of the board to do it. 4. If the jury find that the only purpose of the plaintiffs in going upon the land of the city was to determine a disputed line, they were not guilty of trespass under this statute. 5. The plaintiffs must be proved to have had actual notice of the notices, or to have been on the land under such circumstances and conditions that the jury must find that they ought to have seen them. 6. The posted notices, being unsigned or unauthenticated by a name or signature of any party having the legal right to post them, were not such notices as the statute requires or contemplates, and were not sufficient to render the plaintiffs guilty of trespass, even if they were seen by them."

The judge refused so to rule, and instructed the jury, among other things, as follows:

" The defendants have offered evidence tending to show that two notices were posted upon these premises in this vicinity, upon this ten-acre lot, and near where these parties were arrested, or some of them. And so far as the forms of the notices are concerned, if they were like that which has been

introduced in evidence, in my judgment they were legal notices under the statute; that is, I propose to instruct you so for the purposes of this case. There is no serious dispute, as I understand it, that they were of the same terms with this one, — that this is one of the two. . . . The plaintiffs controvert the sufficiency of the notice; but for the purposes of, the case these notices, if they were alike, and this is one of them, I think were sufficient in form to comply with the requirements of the statute.

" Then, in regard to posting, as to the authority by which they were posted, I will say something later; but now, how were they posted, and where? My judgment is that the law required that they should be posted in suitable places, where they could be seen by any person in the exercise of reasonable and ordinary care and attention. It would not be in compliance with the statute if a man were to go and post the notice in some obscure place behind some brush or other obstacles, with the idea that he would comply with the law, and yet put his notice in such a form that a person coming on the land would not see it. The idea and object of the statute are that good faith shall be used, that the notice shall be reasonably distinct and not a blind one, and that it shall be posted in a reasonably suitable place or places, so that it may be seen by persons who come upon the land, in the exercise of ordinary care and attention, and it will be the duty of the defendants to satisfy you that these notices were thus placed. If they were, then, for the purposes of this case so far as this matter of the notice is concerned, I instruct you that it is not necessary that the defendants should satisfy you that either of the parties saw the notices, although Fitzgerald, if I understand it, admits that he did see one of the notices. It is not necessary that any one of them should have seen them. But I propose to give such a construction of the statute as that, if these notices were properly posted, the plaintiffs are in the same legal position whether they saw the notices or not. In other words, for this case, I say to you that the statute does not require it to be proved that the plaintiffs saw the notices. They are affected by the notices, if they were sufficient in terms, as I have ruled that they were, and if they were properly posted by the proper authority.

" And now the remaining question is, Were they posted by some person having lawful control of said premises? . . . If you are satisfied by the fair preponderance of the evidence that the claim of these defendants in regard to the course that was pursued and the authority and direction given in regard to these notices was followed, — in other words, if you are satisfied that the claim of the defendants about that is correct in fact, — then it would be competent for you to find, and it would be your duty to find, that the notices were posted by a person in control within the meaning of the statute. Now, these things are necessary for the defendants to show, by a fair preponderance of the evidence, for their justification : ownership by the city of the land ; the presence of the plaintiffs upon the land owned by the city ; the proper, reasonable posting of the notices, in the sense in which I have explained, by a person in control, in the sense in which I have explained that. If the claims of the defendants in regard to these matters are established by a fair preponderance of the evidence, then the arrest was warranted in law."

The jury returned a verdict for the defendants in each case ; and the plaintiffs alleged exceptions.

*E. H. Lathrop,* for the plaintiffs.

*G. D. Robinson,* for the defendants.

FIELD, C. J. The first contention of the plaintiffs is that St. 1890, c. 410, is in effect a repeal of Pub. Sts. c. 203, § 99, and a substitution therefor of a new statute, and that Pub. Sts. c. 203, § 100, does not apply to the new statute. St. 1890, c. 410, begins as follows : " Section ninety-nine of chapter two hundred and three of the Public Statutes is hereby amended so as to read as follows "; and then follows a somewhat different provision from that contained in Pub. Sts. c. 203, § 99, but upon the same subject matter. This form of amendment is one often adopted by the Legislature, and the effect of it is to put the language of the new statute in place of that of the old, and other provisions of statute relating to the old statute and not inconsistent with the new are held to apply to the new after that statute takes effect.

The next contention of the plaintiffs is that, on the evidence, " the overseers of the poor had no right to post the land." The argument is that, as the city of Springfield owned the land, the city council of the city alone had authority to order notices to be

posted. We think that the evidence was sufficient to warrant the jury in finding that the overseers of the poor had authority to order the notices to be posted, and that, if the evidence was believed by the jury, it was their duty so to find. By Pub. Sts. c. 33, § 3, when no directors are chosen the overseers of the poor have the inspection and government of the almshouse. Not only was there no evidence that any directors had been chosen, but the ordinances of the city put in evidence show that the overseers of the poor had the charge and direction of the almshouse or city farm. The exceptions also recite that "there was evidence tending to show that the overseers of the poor had been, and were in fact, in control of said farm." The overseers of the poor, if in control of the farm, were in control either as public officers or as agents of the city, (*Neff* v. *Wellesley,* 148 Mass. 487,) and were, we think, persons having lawful control under the laws and the ordinances of the city for the purpose of excluding trespassers.

The next contention of the plaintiffs is, that the notices posted were unauthenticated by any signatures, and did not express the authority by which they had been posted. But there is nothing in the statute requiring the notices posted to be signed. It is common knowledge that similar notices posted on land, such as guide posts, notices of private ways, and notices at railroad crossings, are not signed. It would be almost impossible to have them signed in the handwriting of the persons who ordered them posted, and a printed facsimile would afford no assurance of the genuineness of the signatures. The Legislature in enacting that persons may be forbidden from entering upon certain land by "notice posted thereon," without prescribing the form of the notice, must be held to have intended that the notices might be posted in a reasonable manner, according to the usual way in which similar notices are posted. The instruction upon this part of the case seems to us correct.

It is suggested in the brief of the plaintiffs, that an innocent entry by a person upon land under a claim of right cannot be an entry without right within the meaning of the statute, even although the land be found to belong to another person. The plaintiffs proved no right to enter upon the land of the city. The Pub. Sts. c. 203, § 99, forbade a wilful entry; St. 1890,

c. 410, changed this and forbids an entry without right. There is nothing in the last named statute which indicates that a belief on the part of the person entering upon land not in his control that the land is his, is to be regarded as a justification. He must be forbidden to enter by the person having lawful control of the premises in the manner prescribed by the statute, and this having been done, if he enters without right upon the improved or enclosed land of another person, the offence is committed. It is not necessary that the person entering should actually see the notices posted, if they were reasonably distinct and were posted in reasonably suitable places, so that by the exercise of due care they would be seen by persons who come upon the land. *Smith* v. *Lowell,* 139 Mass. 336.

The last point urged by the plaintiffs is the exception to the exclusion of evidence that Smith and Petersen were acquitted at the trial of the complaint against them for the alleged trespass. This evidence was rightly excluded. *Fowle* v. *Child, ante,* 210. *Commonwealth* v. *Cheney,* 141 Mass. 102. *Commonwealth* v. *Waters,* 11 Gray, 81.

These are all the questions argued by the plaintiffs, and we see no error in the exceptions. *Exceptions overruled.*