COMMONWEALTH *vs.* NICK M. EGLESON.

Suffolk.    January 6, 1969. — January 30, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Trespass. Public Building. Municipal Corporations,* Property. *Constitutional Law,* Freedom of speech. *Words,* "Another."

A building owned by a municipality is included in the phrase "buildings . . . of another" in G. L. c. 266, § 120, dealing with the crime of trespass. [262]

A conviction under G. L. c. 266, § 120, of trespassing in a city building, in which the office of the local draft board was located on an upper floor, was not to be disturbed in the circumstances on the asserted ground that the defendant was in the building to exercise his constitutional right to freedom of speech and so was not there "without right" where it appeared that, on an April morning at an early hour before the building was open to the general public, the defendant entered the building and proceeded to talk to a group of pre-inductees waiting in a small lobby on such upper floor or on the stairway thereto, telling them of his association with a "Draft Resistance Group" and informing them of their rights, and that when police in effect asked him to leave he insisted on his right to stay and was thereupon arrested. [263-264]

COMPLAINT received and sworn to in the Municipal Court of the West Roxbury District on April 2, 1968.

Upon appeal to the Superior Court the case was heard without jury by *Canavan, J.*, a Municipal Court judge sitting under statutory authority. The defendant was found guilty and alleged exceptions.

*John G. S. Flym* for the defendant.

*James M. Kickham*, Assistant District Attorney, for the Commonwealth.

WILKINS, C.J. The defendant was convicted of the crime of trespass and fined $20. General Laws (Ter. Ed.) c. 266, § 120, in part provides, "Whoever, without right, enters or remains in or upon the dwelling house, buildings, boats or improved or enclosed land, wharf or pier of another, after having been forbidden so to do by the person who has the lawful control of said premises, either directly or by notice posted thereon, shall be punished by a fine of not more than twenty dollars."

The evidence was uncontradicted. The trespass occurred at a building owned by the city of Boston at 20 South Street in the Jamaica Plain district. The building consists of four brick stories, and contains several facilities: an office of Selective Service System Local Board No. 151, a Civil Defense office, and an entrance to a running track on the fourth floor; a gymnasium with four basketball courts, a dental clinic, and a baby clinic on the third floor; a locker room on the second floor; offices of the Visiting Nurse Association and of the custodian on the first floor; and a swimming pool in the basement. Two staircases lead from the ground floor to the fourth floor. There are numerous bulletins setting forth information of public interest, such as employment opportunities.

One Slowe was the custodian in charge of the building. On the morning of April 2, 1968, at 6:15 A.M. he arrived at the building, and unlocked the doors. Thereafter the front doors were left open. During the next forty-five minutes two women in charge of the Local Board office and about twenty young men reporting to that office entered the

building. Pre-inductees normally arrive before 7 A.M. and stand in the lobby of the fourth floor in a space about fifteen by twenty feet until 7:30 A.M. when they go downstairs and leave by bus. The practice was for pre-inductees to check in with the Board, obtain their files, and take them to the Army Base, where they undergo physical examination.

That morning between 6:20 and 6:25 the defendant, an instructor at Massachusetts Institute of Technology who worked with the "Boston Draft Resistance Group," accompanied by three girls, entered the building. Slowe inquired whether the defendant had business in the building, to which the latter replied that he wished to speak to pre-inductees as to their rights in relation to the draft. Slowe requested the defendant to leave the building. The defendant asked whether pre-inductees were allowed to enter. Slowe said that they were allowed to go to the fourth floor. Slowe also said that the defendant was interfering with his cleaning the building and that only cleaning personnel and persons having business with the Draft Board were normally admitted at that hour. The defendant and his companions then went outside the first set of doors and remained in the entrance patio.

About 6:35 the defendant, accompanying a pre-inductee, reëntered. Pursuant to a telephone call by Slowe, police officers arrived about 6:45. The officers and Slowe found the defendant speaking with a group of pre-inductees on the landing between the third and fourth floors. At that time about twenty pre-inductees were present, most of them on the fourth floor, but some were on the staircase between the third and fourth floors. The officers said if the defendant would leave, they would not arrest him. The defendant stated that he felt that he had the right to stay, and the defendant was arrested.

In talking to pre-inductees, the defendant identified himself and his association with the "Boston Draft Resistance Group," stated his dislike of the Vietnam War, and informed them of their rights. He did not force conversation upon anyone. He did not counsel anyone to commit

an illegal act, and did not intend to create a disturbance or interfere with the cleaning. He insisted on entering and remaining in the building because it would have been very difficult, if not impossible, to speak "meaningfully" with pre-inductees outside the building.

1. The defendant asserts, without citation of authority, that G. L. c. 266, § 120, covers only private property and "does not apply to buildings owned by a municipality." But in 1895 there was a decision by this court in which the contrary was assumed without discussion. *Fitzgerald* v. *Lewis*, 164 Mass. 495. That case arose under lineal statutory predecessors of § 120, namely Pub. Sts. c. 203, §§ 99, 100, and St. 1890, c. 410, and upheld police arrests for trespasses upon real estate owned by the city of Springfield. The land was part of the poor farm upon which the almshouse was located. The statute contains no exceptions, and we see no reason to believe that there was any inadvertent oversight in the opinion. We are unimpressed with the defendant's analysis of Pub. Sts. c. 203, § 99, and his failure to give adequate weight to the amendment by St. 1890, c. 410, which expressly covered "buildings." [1] The present statute, so far as material, is in substantially the same language as St. 1890, c. 410, and R. L. c. 208, § 109.

We hold that "another" in c. 266, § 120, includes the State and municipalities. To similar effect are majority opinion in *Adderley* v. *Florida*, 385 U. S. 39; *State* v. *Kirk*, 84 N. J. Super. 151, 156.

2. The defendant challenges the conviction on the ground that he was not in the building "without right," as required in § 120. He bases his case largely upon a claim to exercise a so called First Amendment right. The resolving of such rights depends upon the particular facts of each case. In final analysis, determination depends upon the view which

---

[1] "An Act relating to trespass upon real estate. Section ninety-nine of chapter two hundred and three of the Public Statutes is hereby amended so as to read as follows: Whoever without right enters upon or remains on or in the dwellinghouse, buildings or improved or enclosed land of another, after being forbidden so to do by the person having the lawful control of said premises, either directly or by notice posted thereon, shall be punished by a fine not exceeding twenty dollars."

currently prevails in the Supreme Court of the United States, and which is often expressed by a divided court.

In the circumstances, we content ourselves by stating what appear to us should be the determinative factors. The defendant first entered the building in the early morning before it was open to the general public. It was approximately the hour usual for the appearance of pre-inductees to check in with their Local Draft Board. There was a period of one-half hour in which about twenty of them were to receive their files from the Board and depart together in a bus to the Army Base. This was not a propitious time nor place for a self-appointed layman who was a member of a draft resistance group to offer his ideas on constitutional or other "rights" or to volunteer expositions of grounds of opposition to the Vietnam War. If the defendant could properly enter with three girls of undisclosed purpose, then an indefinite number of people, accompanied by individual groups of additional persons, could also enter. If the defendant with similar intent could enter with one pre-inductee, an indefinite number of others could, equally unsolicited, enter with one or more other pre-inductees. The defendant's purpose could, at best, be of no help, and probably would be a deterrent, to the efficient work of the Draft Board. Interviews attempted, while standing on the stairway and in the rug-sized lobby of the fourth floor, could hardly be more "meaningful" than similar discussions outdoors in the April morning air which the defendant refused.

The city had both a right and a duty to protect the building and its functions against any self-proclaimed need for an individual entry which could not, so far as appears, benefit the public use in any respect. "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley* v. *Florida*, 385 U. S. 39, 47. "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at

any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy." *Cox* v. *Louisiana*, 379 U. S. 536, 554. See *Cox* v. *Louisiana*, 379 U. S. 559, 563; *Cameron* v. *Johnson*, 390 U. S. 611, 616–617; *Amalgamated Food Employees Union Local 590* v. *Logan Valley Plaza, Inc.* 391 U. S. 308, 320.

*Exceptions overruled.*