Barrett, J.
This matter is brought before the court by the plaintiffs consisting of the Board of Managers of the 39 Joy Street Condominium Association and the named individual plaintiffs in their individual capacity. The plaintiffs claim to be aggrieved by a decision of the defendant Board of Appeal of Boston and they appeal the decision of that board. The plaintiffs also seek declarar tory relief regarding certain aspects of the condominium documents involved herein. At issue, in addition to the question of whether the Board of Appeal (Board) properly issued a variance to the defendant Edward Ciancarelli (Ciancarelli) to permit the operation of a beauty parlor on the ground floor and basement of the building at 39 Joy Street, Boston, Massachusetts, is the standing of the plaintiffs to appeal the decision of the Board and, also, the standing of the defendant, Ciancarelli, to seek a variance respecting the property without the consent of the Board of Managers of the plaintiff condominium association (Association) or the individual plaintiffs. In addition, the plaintiffs seek a declaration regarding the Association’s master deed which was amended shortly before Ciancarelli took title to the property.
FINDINGS
The court finds the following facts:
1.The parties entered into an agreed statement of facts appearing as pages two through five, inclusive, of the pretrial memorandum. A copy of these pages is attached hereto as Exhibit A and made a part hereof. The court accepts the agreed statement of facts and treats that statement as findings made by it.
2. In the agreed statement of facts the parties set forth certain facts relative to the purported amendment to the master deed. These facts are set out in ¶¶7, 8 and 9 of the agreed statement of facts. The court finds that the bylaws of the Association required not less than seven days notice of a special meeting of the owners and such notice was not given to the City of Boston which was then the owner of Unit C, having taken tax title to that unit. Consequently, since notice was not given, the purported amendment is not valid.
3. 39 Joy Street was converted to condominiums in 1986. Up to that time the property, which consisted of four stories and a basement, had been used for residential purposes on the upper three floors and for commercial purposes in the first floor and, perhaps as well, the basement area. The master deed, which was recorded in 1986, provided that the building contains one commercial unit and three residential units. The master deed also provided that the “building and units are intended for residential purposes.”
4.39 Joy Street is located on the north slope of Beacon Hill and, as noted, is a four stoiy brick building which is attached to the abutting property by parly walls. It was constructed pursuant to a building permit issued by the City of Boston in 1905, authorizing the construction of a tenement house for three families and one office.
5. The ground floor and basement of 39 Joy Street has never been used for residential purposes in accordance with the building and zoning bylaws of Boston but, rather, was used for a store and apartments in 1929, a restaurant and tenement in 1930, three family occupancy and a store in 1960, as a graphic art studio in 1979, as a photography studio and architect studio up to March 1984 and as a graphic art studio from March 1984 until June 1986.
6. The condominium unit in issue, designated as unit C, has approximately four hundred and ninety square feet on the ground level and three hundred ninety square space in the unfinished basement. Units 1, 2 and 3, which are located on floors 2, 3 and 4 of the building each contain approximately seven hundred and fifty square feet.
7. Unit C, on the ground level, is narrower and shallower than units 2, 3 and 4 because of a passage way to the rear of the property, a recessed stoop that services only the entry to- unit C and a common entry for the residential units. It has a facade of wood construction with a commercial finish and a plate glass window sections which do not open. The unfinished basement space is of restricted use because of its size and the presence of an electrical service box and two boilers which are common elements of the entire condominium. It also is of limited ceiling height and contains exposed and intrusive utility lines for gas, water and sewer.
*682 8. Unit C has not been occupied for any purpose since June 1986, remaining vacant until September 1995. It was taken by the City of Boston for the failure to pay taxes and by it sold to Ciancarelli by a deed dated May 31, 1994. Ciancarelli paid the City of Boston $70,000 for the property which was represented by the City in its sale documents and request for bid as commercial property.
9. Ciancarelli has been a licensed hair dresser in Massachusetts since 1968 and has operated a hair dressing salon in the City of Boston during that period. From 1974 through September, 1995, he operated a salon a 35 Myrtle Street which is approximately 175 to 200 feet from the building in question and located around the corner. Since Ciancarelli purchased Unit C he has renovated it, spending approximately $30,000, and has occupied it since September 1995 and has conducted a beauty salon thereon. His operation of the salon at 39 Joy Street has followed the same pattern as his beauty salon previously located on Myrtle Street. He is open Tuesday through Saturday, 7:30 to 5:00, has approximately ten clients per day, with a maximum of no more than two to three persons at any one time. He receives no deliveries at his beauty salon, removes the trash himself and carries the linen with him. He operates it personally, without any employees.
10. Ciancarelli has, in effect, moved his beauty shop operation from his prior location at 35 Myrtle Street to 39 Joy Street. In the course of his operation on Myrtle Street, he never received a complaint regarding any aspect of his beauty shop operation from neighbors or building occupants.
11. On May 31,1994, Ciancarelli after receiving the deed to unit C from the City of Boston, conveyed the property to himself as Trustee of Ciancarelli Realty Trust, the beneficiaries of which are Ciancarelli himself and his wife. It is noted that, although title technically was and is in the name of the trust thereafter, all of the proceedings, including the application for a variance were in the name of Ciancarelli personally. However, none of the parties have made an issue of this and have apparently been content to treat the trust and Ciancarelli as though they were one. The court will do likewise.
12. Ciancarelli’s appeal to the Board of the denial of an occupancy permit by ISD was neither authorized nor assented to by either the Association or any of its members and none of the unit owners.
13. The interest and obligation of the Association, having to do with the management, care and control of the common areas and facilities of the condominium are clearly impacted by the use of unit C as a beauty salon. Because of this, the Association clearly has standing to bring this proceeding and, to the extent that this is a finding of fact, the court so finds.
14. The individual plaintiffs who occupy and or own units 1, 2 and 3 are abutters to unit C and, because of their interest in the building and the Association and its common property, have a sufficient basis to bring this litigation in their own names. Insofar as standing as a finding of fact, the court so finds on behalf of the individual plaintiffs.
15. Ciancarelli was aware prior to the time that he took title to the property of the opposition of the individual plaintiffs and the Association to his purchase of unit C and his plan to use it as a beauty salon. Ciancarelli did not request the Association nor the individual unit owners to join in the application to the ISD nor the appeal therefrom to the Board of Appeal.
16. The neighborhood in which 39 Joy Street is located is largely residential, with the exception of certain business uses almost exclusively devoted to local clientele. Joy Street, located on the north slope of Beacon Hill, is noted as essentially residential although included thereon is a dentist office adjacent to the dentist’s home, an administrative officer for the African American Museum and Hill House. In addition, the African American Museum is located on Smith Place, a dead-end street accessible only through Joy Street. There have been no new commercial uses on Joy Street since 1979. A short distance away on Myrtle Street, there are a number of business uses including a small market, a tailor shop, a barber shop, a sub and pizza shop and other small businesses.
17. A number of the buildings in the neighborhood with similar first floor commercial or store front facades were converted to and used for residential purposes notwithstanding the storefront-like appearance of the first floor of those properties.
18. The master deed, as previously noted, provided for commercial use. To the extent that it is a finding of fact, the court finds that the use of unit C for a beauty salon did not violate the terms of the master deed.
19. Subsequent to the creation of the beauty salon by Ciancarelli, the plaintiff Sara Arrand (Arrand) observed on several occasions unpleasant odors from unit C coming into her second floor unit of the building. These smells were from solutions used by Ciancarelli in his beauty salon operation. Arrand complained to Ciancarelli regard this. In addition, there were controversies between Ciancarelli and the plaintiffs regarding increased heat during the day to be provided to unit C.
20. There was no evidence before the court that the layout of unit C, or its lack of residential features including kitchen and bath, its size, walls, etc., were peculiar to unit C but not to the neighborhood generally. The court finds that the basement space in unit C as presently constituted would not be suitable for residential housing. However, the court also finds that the first floor is suitable for residential housing at cost of renovation that is not unreasonable. The first floor has sufficient living space to comply with code requirements. The court also finds that, in order to convert the property to residential use, variances would be required having to do with floor area ratio and open *683 space and, in addition, the consent of the three unit owners would be required to convert the area from commercial to residential purposes.
21. The use of unit C for commercial purposes would affect the sale of a residential unit in the building adversely. The court, however, does not believe this to be of great significance since the master deed provided that unit C would be used commercially. There was also evidence offered relative to an increase in insurance costs after Ciancarelli commenced operation of the beauty parlor. However, this testimony had to do with a requirement for a new directors and officers liability coverage policy as to which the evidence was, at best, unclear relative to whether this had to do with the new beauty parlor or a commercial use of unit C generally. The cost of the new director and officers policy was $600 per year. The court, on this record, is unable to attribute any significance to this issue.
22. The Board included as a proviso to the grant of the variance to Ciancarelli that it was “granted to the Applicant/Owner only.”
23. The applicable sections of the zoning code of the City of Boston were marked as Exhibit 19 and included in the evidence of this case. The court will not attempt to recite the contents of those zoning codes but refers the reader to the numbered exhibit for their contents. The only provision specifically relevant to the inquiry at hand is §7-3 Conditions Required for a Variance. This provides as follows:
The Board of Appeal shall grant a variance only if it finds that all of the following conditions are met:
(a) that there are special circumstances or conditions, fully described in the findings, applying to the land or structure for which the variance is sought (such as, but not limited to, the exceptional narrowness, shallowness or shape of the lot, or exceptional topographical conditions thereof) which circumstances or conditions are peculiar to such land or structure but not the neighborhood and that said circumstances or conditions are such that the application of the provisions of this code would deprive the appellant of the reasonable use of such land or structure;
(b)- that, for reasons of practical difficulty in demonstratable and substantial hardship fully described in the findings, the granting of the variance is necessary for the reasonable use of the land or structure and that the variance as granted by the Board is the minimum variance that will accomplish this purpose;
(c) that the granting of the variance will be in harmony and general, purpose and intent of this code, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare.
(d) omitted as not relevant.
In determining its findings, the Board of Appeal shall taken into account: (1) the number of persons residing or working upon such land or in such structure; (2) the character and use of adjoining lots and those in the neighborhood; and (3) traffic conditions in the neighborhood.
24.The court took a view of the premises and the neighborhood.
DISCUSSION and RULINGS
1. The court has found as a fact that the plaintiffs, as an Association and as individuals, have standing to bring this proceeding. To the extent that it is also a ruling of law, the court hereby makes that ruling. The interests of the Association in the common property clearly were impacted by the variance granted by the Board which thus entitles the Association to standing to prosecute an appeal as both an abutter and as an owner of part of the property directly affected by the Board’s decision. The plaintiffs in their individual capacity also have standing for the same reason and, that as abutters and occupants their property is directly affect by the granting of the variance by the Board. The plaintiffs clearly were aggrieved by the decision of the Board in that it was an infringement of their legal rights. Marashlian v. Zoning Board of Appeal of Newburyport, 421 Mass. 719, 721 (1996).
2. The issue of the standing of Ciancarelli to seek a variance without the consent of the Association and the other unit owners is of significant concern. Although there is no case law specifically on point, it does seem that if there are a number of owners of the property as to which a variance is sought, then all of those owners must be involved in the application for a variance. Here, the common areas and facilities of the Association were impacted and yet the Association did not join in the appeal leading to the variance, nor does the record show they were ever requested to and, in fact, it is clear that the Association opposed the variance. It seems inconceivable that an owner of a portion of the property as to which the variance is sought would not be required to j oin in the application, for otherwise his or its properly could be adversely affected without permission. See for example, Gordon v. Zoning Board of Appeal of Lee, 22 Mass.App.Ct. 343, 347 (1986). The “joint sovereignty” nature of the ownership in a condominium as described by Judge Kass in Woodvale Condominium Trust v. Scheff, 27 Mass.App.Ct. 530, 533 (1989), compels this conclusion. See also McEneneay v. Chestnut Hill Realty Corporation, 38 Mass.App.Ct. 573, at 577 (1995). Based on the nature of a condominium and the relationship of the owners thereto, it appears to this court that one owner cannot unilaterally seek to affect, through an application for a variance or appeal from the denial of a nonpermitted use, to impose upon the interests of the Association and his fellow unit owners a burden to which the Association and unit owners do not agree. The proper course, it would seem, would be to request, in appropriate fashion the Association and, fellow unit owners, their consent and joinder to any such application and, in the event that such request *684 is rebuffed, to challenge that action by an appropriate proceeding. Consequently, it is the ruling of this court that Ciancarelli had no standing to bring the appeal before the Board and, consequently, the variance granted by the Board must be annulled.
3.There is, however, still another and further reason for annulling the decision of the Board. It is well understood that variances are to be granted sparingly and that there is a legislative policy of avoiding variances except upon a clear showing that the statutory imposed prerequisites have been clearly met. Dion v. Board of Appeal of Waltham, 344 Mass. 547, 555 (1962). The Superior Court judge is required to hear the matter de novo and the validity of the decision of the Board must be determined based on the facts found by the judge. Bicknell Realty Co. v. Board of Appeal of Boston, 330 Mass. 676, 679 (1953). The burden of proof is upon those who seek to defend the actions of the Board. Warren v. Board of Appeal of Amherst, 383 Mass. 110 (1981). The court rules that the defendants have not carried the burden. Unit C could be used, with modifications, for residential purposes as were other properties in the area which had a store front type facades The expense of renovating the property for residential purposes is not a hardship under the case law justifying the granting of a variance. The costs of such renovation for residential use was not established as to be so prohibitive as to create a hardship under the governing case law. The fact that dimensional variances may be required in order to convert the property to residential use does not constitute a hardship either. A claim that a variance is necessary can hardly be equitably asserted by Ciancarelli who himself is here attempting to justify a variance that he found necessary to seek. The court notes that the variance sought by Ciancarelli, being a use variance, is more intrusive to the residential character of the neighborhood than would be the type of variance necessary in order to use the property for residential purposes.
Turning specifically to the requirements of the applicable code contained in §7-3, the court finds that there were no special circumstances or conditions of unit C that were peculiar to this land and structure but not the neighborhood and that these conditions were such that Ciancarelli would be deprived of the reasonable use of the land or building if a variance were not granted. As noted above, the court has determined factually, based on the evidence, that the property could be converted to and used for residential purposes and that the variance as granted by the Board is not necessary to accomplish this and, in fact, is contrary to that appropriate use. The court notes further that, while the neighborhood does contain some commercial uses, these commercial uses are gradually being eliminated from the neighborhood and that the neighborhood is essentially a residential neighborhood which will be injured by the establishment or reestablishment, as the case may be, of commercial uses. Consequently, the court rules that the granting of the variance under the circumstances of this case will not be in harmony with the general purposes and intent of the Boston Code and will be injurious to the neighborhood.
4. For all the foregoing reasons, the court rules that the Board has exceed its authority and annuls its decision granting the variance.
5. The plaintiffs have also asked for declaratory relief in the event that the variance subject to this appeal is upheld. The variance has not been upheld and, therefore, no declaratory relief is in order.
ORDER
The court orders that the decision of the Board of Appeal herein be annulled as beyond its jurisdiction and also for the reason that the defendant Ciancarelli lacked appropriate standing to bring before the Board of Appeal the appeal which generated the variance involved herein.
EXHIBIT A:
(1) Agreed Statement of Facts
¶1. The 39 Joy Street Condominium (“the Condominium’’) is located in an H-2-65 residential zone under the Boston Zoning Code (“the Code”).
¶2. The Condominium itself is comprised of four (4) units, three of which are and were at all times here relevant, utilized as residences in accord with the zoning classification of the property and the Master Deed creating the Condominium.
¶3. The fourth unit, Unit C, had, since on or about June, 1986, and until it was acquired by the defendant Edward Ciancarelli (“Ciancarelli”) following a tax title foreclosure, been vacant.
¶4. In addition to the individually owned units the Condominium is comprised of Common Elements, including the land itself, common hallways and entryways, utility installations and the foundation and structural components of the building.
¶5. Ciancarelli, his guests, or customers will be utilizing these Common Elements in the course of operation of the beauty parlor business, by traversing the common areas, using the same for storage, and through use of the common heat and hot water systems.
¶6. In order to enter Unit C through the primary mode of access on Joy Street, an individual must cross over an exterior step and stoop, which constitute part of the common area or elements of the Condominium, but which serves Unit C exclusively.
¶7. On April 13, 1994, prior to Ciancarelli’s purchase of his unit, an amendment to Section 3 of the Master Deed of the Condominium was recorded with the Suffolk Registry of Deeds at Book 18999, Page 133 (the efficacy of which is contested by the Defendant Unit Owner).
¶8. The April 13, 1994 amendment added the following sentence to the provision in the Master Deed which described the building and its use as comprised of “one (1) commercial unit and three (3) residential units”:
The commercial unit (Unit C) shall be used solely for commercial purposes consistent with professional office use as it existed on January 1, 1986. Any change of said use must be approved by 75% of the common interest of all the unit owners.
¶9. On May 31, 1994, Ciancarelli, after formally acknowledging receipt of a copy of the amendment to the Master Deed *685 and his desire to proceed, acquired title to Unit C of the Condominium from the Public Facilities Department of the City of Boston.
¶10. On July 20, 1994, Ciancarelli filed an Application with the Inspectional Services Department (“ISD") of the City of Boston to change the Condominium’s legal occupancy of record from “three apartments and a store” to “three apartments and a beauty parlor.”
¶11. Neither the Condominium Association nor the other Unit Owners authorized or assented to Ciancarelli’s Application to the ISD.
¶ 12. Ciancarelli’s application to change the permitted legal occupancy of the Condominium premises was denied by ISD on August 1, 1994 because the Application sought permission for a use forbidden under Article 8, Section 8-7 (Use #43) of the Code.
¶13. From this decision denying a change in the permitted use, Ciancarelli, on August 9, 1994, filed an Appeal to the Board of Appeal through which he sought a variance from the application of the Code.
114. In a decision dated January 10, 1995 and filed with the Inspectional Services Department on January 26, 1995, the Board granted Ciancarelli’s petition for a variance, with the proviso that the relief was limited to the applicant/owner only.
115. The defendants rely on the following alleged circumstances or conditions as constituting the “special circumstances or conditions” peculiar to the land or structure (but not the neighborhood generally), such that an application of the Code without variance would deprive Ciancarelli of “the reasonable usé of such land or structure:”
(a) the commercial facade and interior layout of the Unit;
(b) the lack of residential features such as bath and kitchen facilities;
(c) the limited size of the Unit;
(d) the substantial imposition of common heating elements in the lower level of the Unit;
(e) the Unit is to be devoted to a use which is supportive of and consistent with the historic neighborhood fabric;
(f) the historic use of Unit C;
(g) the size, and configuration of the unit and its walls and fenestration;
(h) the limited or nonexistent capacity of the unit to satisfy code requirements regarding natural light, natural ventilation and security; and
(i) the limited ability to make exterior alterations to accommodate a residential use because of the restrictions imposed by the Beacon Hill Architectural Commission.